IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Southern Division

| | |
|---|---|
| Bureau of Consumer Financial Protection,<br><br>*Plaintiff*,<br><br>v.<br><br>Fair Collections & Outsourcing, Inc.,<br>et al.,<br><br>*Defendants*. | Case No. 8:19-cv-02817-GJH |

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF ITS
MOTION TO STRIKE DEFENDANTS' AMENDED AFFIRMATIVE DEFENSES**

Plaintiff Bureau of Consumer Financial Protection (the Bureau) respectfully submits this memorandum of law in support of its Motion to Strike Defendants' Amended Affirmative Defenses.

**INTRODUCTION**

The Bureau filed this action in September 2019 to address Defendants' numerous violations of the Fair Credit Reporting Act and its implementing regulation, the Fair Debt Collection Practices Act, and the Consumer Financial Protection Act. The Bureau seeks, *inter alia*, injunctive relief and civil money penalties. ECF No. 1.

On November 30, 2020, the Court denied in its entirety Defendants' motion to dismiss or, in the alternative, stay the action. ECF No. 24. Defendants each filed an Answer to the Complaint on December 28, 2020, asserting numerous affirmative defenses. ECF Nos. 30-34. On January 19, 2021, the Bureau moved to strike Defendants' affirmative defenses. ECF No. 35.

Defendants then filed amended complaints or moved to amend,[1] deleting some of the affirmative defenses challenged by the Bureau and revising others. ECF Nos. 36-39, 40-1. But Defendants' revisions to the remaining affirmative defenses do not resolve the fatal flaws in those defenses. As discussed below, four of the amended affirmative defenses are still legally insufficient, fail to satisfy the pleading requirements of Rules 8 or 9, and threaten to expand discovery into irrelevant areas, thereby unnecessarily consuming resources of the parties and the Court. Accordingly, they should be stricken.

## STANDARD OF REVIEW

Rule 12(f) permits the Court to strike from a pleading an "insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Courts enjoy "wide discretion in determining whether to strike an affirmative defense under Rule 12(f) in order to minimize delay, prejudice, and confusion by narrowing the issues for discovery and trial." *Haley Paint Co. v. E.I. DuPont De Nemours & Co.*, 279 F.R.D. 331, 335-36 (D. Md. 2012) (internal quotations omitted). Indeed, despite a general disfavor for Rule 12(f) motions, the Fourth Circuit has noted that "'a defense that might confuse the issues in the case and would not, under the facts alleged, constitute a valid defense to the action can and *should* be deleted.'" *Waste Mgmt. Holdings, Inc. v. Gilmore*, 252 F.3d 316, 347 (4th Cir. 2001) (quoting 5A A. Charles Alan Wright & Arthur R. Miller, *Fed. Prac. & Proc.* § 1381 at 665) (emphasis added).

In addition to asserting only legally valid defenses, defendants must also ensure that their affirmative defenses are properly pled. This Court has held that affirmative defenses are subject to the pleading requirements articulated by the Supreme Court in *Bell Atlantic Corp. v.*

---

[1] The day after Defendants' time expired to amend as of right, Defendant Fair Collections & Outsourcing of New England, Inc. filed a motion to amend its Answer. ECF No. 40. The Bureau consented to the filing of the motion while reserving its rights to challenge the substance of the amendments. ECF Nos. 40 at ¶ 5, 40-1 at 2.

2

*Twombly,* 550 U.S. 544 (2007), and *Ashcroft v. Iqbal,* 556 U.S. 662 (2009). *E.g.*, *Alston v. Transunion*, No. 16-491 (GLH), 2017 WL 464369, at *3 (D. Md. Feb. 1, 2017) (Hazel, J.); *Topline Sols., Inc. v. Sandler Sys., Inc.*, No. 09-3102 (BEL), 2010 WL 2998836, at *1 (D. Md. Jul. 27, 2010); *but see, e.g.*, *Lockheed Martin Corp. v. United States*, 973 F. Supp. 2d 591, 595 (D. Md. 2013). While this pleading standard "does not require the assertion of all supporting evidentiary facts," it does require that, "[a]t a minimum, . . . some statement of the ultimate facts underlying the defense must be set forth, and both its non-conclusory factual content and the reasonable inferences from that content, must plausibly suggest a cognizable defense available to the defendant." *Ulyssix Techs., Inc. v. Orbital Network Eng'g, Inc.,* No. 10–02091 (ELH), 2011 WL 631145, at *15 (D. Md. Feb. 11, 2011) (citation omitted); *accord Alston*, 2017 WL 464369, at *3; *Bradshaw v. Hilco Receivables, LLC,* 725 F. Supp. 2d 532, 536 (D. Md. 2010) (holding that affirmative defenses must be pled in such a way as to "ensure that an opposing party receives fair notice of the factual basis for an assertion contained in a . . . defense") (citation omitted). Accordingly, this Court regularly strikes affirmative defenses that do not meet the *Twombly-Iqbal* pleading standard. *See, e.g., Alston*, 2017 WL 464369, at *3-4; *Ulyssix Techs, Inc.*, 2011 WL 631145, at *15-16.

Where a movant demonstrates that an affirmative defense is invalid as a matter of law or insufficiently pled, courts have not required a showing of prejudice, or have assumed plaintiff would be prejudiced because the insufficient defense would needlessly expand the scope of the litigation. *See, e.g., Ulyssix Techs., Inc.,* 2011 WL 631145, at *15-16; *Topline Sols., Inc.,* 2010 WL 2998836, at *2; *Bradshaw*, 725 F. Supp. 2d at 536; *LNV Corp. v. Harrison Family Bus., LLC*, No. 14-03778 (ELH), 2015 WL 5836903, at *6, 13 (D. Md. Oct. 1, 2015) ("In light of the legal insufficiency of defendants' fourth and eighth affirmative defenses, defendants' likely

3

scope of discovery would unduly prejudice LNV."). Indeed, "when an affirmative defense is legally insufficient, it serves no purpose to analyze whether its inclusion would prejudice the opposing party," *State St. Glob. Advisors Tr. Co. v. Visbal*, 462 F. Supp. 3d 435, 442 n.7 (S.D.N.Y. 2020), because "the burden of conducting discovery regarding irrelevant or unsustainable affirmative defenses constitutes such prejudice." *Hartford Underwriters Ins. Co. v. Kraus USA, Inc.*, 313 F.R.D. 572, 575 (N.D. Cal. 2016) (citation omitted).

## ARGUMENT

The Court should strike four amended affirmative defenses pleaded by Defendants: (1) unclean hands; (2) the structure of the Bureau was unconstitutional because it violated Article II; (3) the structure of the Bureau was unconstitutional because it violated Article I; and (4) "*bona fide*" error. As discussed in more detail below, the unclean hands defense and the two constitutional challenges are not valid legal arguments and prejudice the Bureau by exposing it to irrelevant discovery. In addition, the unclean hands defense and the *bona fide* error defense are insufficiently pled. Because Defendants have already amended their affirmative defenses, the Court should strike these defenses with prejudice.

### I. DEFENDANTS' AMENDED UNCLEAN HANDS AFFIRMATIVE DEFENSE IS INVALID AND INSUFFICIENTLY PLED

In support of their amended unclean hands affirmative defense, Defendants allege that:

> To the extent that Plaintiff's claims seek equitable relief, [Defendants] assert[] that such relief must be denied pursuant to the doctrine of unclean hands based on the Plaintiff's duplicitous conduct evidenced by its disregard of its own NORA process and through its multiple serving of Civil Investigative Demands

designed to harass and punish the Defendant[s] for [their] refusal to capitulate to the Plaintiff's unreasonable and excessive demands.[2]

The doctrine of unclean hands prevents a plaintiff from obtaining equitable relief if the plaintiff has been "guilty of any inequitable or wrongful conduct with respect to the transaction or subject matter sued on." *Worldcom, Inc. v. Boyne*, 68 Fed. App'x 447, 451 (4th Cir. 2003) (internal quotations omitted). But the bar for an unclean hands defense is high and generally "may not be invoked against a government agency which is attempting to enforce a congressional mandate in the public interest." *SEC v. Gulf & W. Indus., Inc.*, 502 F. Supp. 343, 348 (D.D.C 1980) (citing *United States v. Second Nat. Bank of N. Miami*, 502 F.2d 535, 548 (5th Cir. 1974)); *SEC v. KPMG LLP*, No. 03-cv- 671 (DLC), 2003 WL 21976733, at *3 (S.D.N.Y. Aug. 20, 2003) (citation omitted); *accord United States v. Cushman & Wakefield, Inc.*, 275 F. Supp. 2d 763, 773-74 (N.D. Tex. 2002); *CFTC v. Kraft Foods Grp., Inc.*, 195 F. Supp. 3d 996, 1009 (N.D. Ill. 2016) (holding "as a matter of law" that "the unclean hands defense is not available in actions brought by the government in the public interest" because of "the principle— articulated by the Supreme Court—that though the United States is subject to the general principles of equity, equitable principles will not be applied to frustrate the purpose of the United States' laws or to thwart public policy") (citation and internal quotations and edits omitted).

Here, the Bureau is acting to protect a public interest, pursuant to its congressional mandate to "enforce Federal consumer financial law consistently for the purpose of ensuring that all consumers have access to markets for consumer financial products and services and that markets for consumer financial products and services are fair, transparent, and competitive." *See* 12 U.S.C. § 5511(a).[3] Accordingly, because the Bureau brings this action to enforce a

---

[2] All Defendants assert unclean hands as their fourth amended affirmative defense. ECF Nos. 36-39, 40-2.
[3] The same is true of the Fair Credit Reporting Act and the Fair Debt Collection Practices Act, both of which are at issue in this case. *See* 15 U.S.C. § 1681(a) (the purpose of the Fair Credit Reporting Act

5

congressional mandate in the public interest, Defendants' unclean hands defense should be stricken because it is legally insufficient. *See, e.g., United States v. HCR Manor Care, Inc.*, No. 14-cv-1228, 2015 WL 11117429, *1 (E.D. Va. Dec. 9, 2015) (striking unclean hands defense because United States was acting in public interest in False Claims Act case).

Courts that have not entirely foreclosed an unclean hands defense against the government have imposed strict limits: the defendant must show egregious misconduct, which bears a nexus to the defendant's ability to defend against the suit, and results in prejudice to the defendant that rises to a constitutional level. *E.g., SEC v. Cuban*, 798 F. Supp. 2d 783, 792-95 (N.D. Tex. 2011) (collecting and analyzing cases); *SEC v Elecs. Warehouse, Inc.*, 689 F. Supp. 53, 72-73 (D. Conn. 1988), *aff'd*, 891 F.2d 457 (2d Cir. 1989); *FTC v. Commerce Planet, Inc.*, No. 09-cv-01324 (CJC), 2010 WL 11673795, *3 (C.D. Cal. Jul. 6, 2010). As discussed below, Defendants' unclean hands defense contains no facts that would make this the rare case where the Court should entertain such a defense against the government.

A. <u>Defendants have failed to allege that the Bureau engaged in any misconduct, much less egregious misconduct</u>

In support of their amended unclean hands defense, Defendants claim the Bureau engaged in "duplicitous conduct evidenced by its disregard" of its pre-suit notification process (the NORA process). Under the NORA process, the Bureau's Office of Enforcement may give the subject of a potential enforcement action notice of the subject's potential violations of law and offer the subject the opportunity to submit a written statement in response. CFPB Bulletin 2011-04, Notice and Opportunity to Respond and Advise.[4] It is unclear what Defendants mean

---

includes ensuring fairness, impartiality, and respect for consumers' right to privacy in assembling and evaluating consumer credit and other information on consumers); 15 U.S.C. § 1692(e) (the purpose of the Fair Debt Collection Practices Act includes eliminating abusive debt collection practices and protecting consumers).

[4] *Available at* https://files.consumerfinance.gov/f/2012/01/Bulletin10.pdf

by the Bureau's "duplicitous conduct" and "disregard" of the NORA process because the Bureau engaged in the NORA process with Defendants before this lawsuit was filed, providing them notice of their potential violations of law and an opportunity to respond to the allegations in writing. But, in any event, the NORA process is discretionary,[5] and the policy expressly states that it "is not intended to nor should it be construed to . . . create or confer upon any person, including one who is the subject of a [Bureau] investigation or enforcement action, any substantive or procedural rights or defenses that are enforceable in any manner." *Id*. Thus, even if the Bureau's Office of Enforcement had forgone the NORA process entirely in this matter, that would fall far short of the egregious misconduct required to sustain a defense of unclean hands against the government. *See FTC v. Nat. Bus. Consultants, Inc.*, 781 F. Supp. 1136, 1153-54 (E.D. La. 1991) (evidence that FTC failed to follow discretionary internal guidelines about whether to file administrative or federal court action was insufficient to sustain defense of unclean hands); *see also SEC v. Nat. Student Mktg. Corp.*, 538 F.2d 404, 407 (D.C. Cir. 1976), *cert. denied sub nom White & Case v. SEC*, 97 S. Ct. 809 (1977) (finding no constitutional or statutory infirmity in SEC decision not to follow its discretionary pre-suit notification process).

Defendants also allege that the Bureau's "multiple serving of Civil Investigative Demands" was "designed to harass and punish the Defendant[s] for [their] refusal to capitulate to the [Bureau]'s unreasonable and excessive demands." The Bureau is authorized by 12 U.S.C. § 5562(c)(1) to serve Civil Investigative Demands on any person who the Bureau has reason to believe may have information relevant to a violation. Here, the Bureau served Civil Investigative Demands on certain Defendants in order to obtain business records and other information relevant to the Bureau's investigation. These lawful requests do not rise to the level of egregious

---

[5] The policy expressly states that "whether to give such notice is discretionary, and a notice may not be appropriate in some situations . . . ." *Id*.

misconduct simply because Defendants were unhappy about receiving them or allege, in a conclusory fashion, that the Bureau's motivation for issuing them was to "harass and punish" Defendants. *See Nat. Bus. Consultants., Inc.*, 781 F. Supp. at 1153-54 (allegations of bad faith in FTC's failure to follow discretionary guidance were insufficient to support defense of unclean hands); *see generally Twombly*, 550 U.S. at 557 ("naked assertions" of wrongdoing require some "factual enhancement" to cross "the line between possibility and plausibility of entitlement to relief"). Indeed, Defendants' allegations regarding the Bureau's Civil Investigative Demands fall far short of the type of egregious misconduct that would be necessary to support an unclean hands defense against the government. *See Commerce Planet, Inc.*, 2010 WL 11673795 at *3 (allegation that FTC claimed, if defendant did not settle, that FTC would expand its claims and seek criminal prosecution of defendant was not egregious misconduct sufficient to support an unclean hands defense); *FTC v. Consumer Health Benefits Ass'n*, No. 10-cv-3551, 2011 WL 13295634, at *5 (E.D.N.Y. Oct. 5, 2011) (allegation that FTC failed to disclose to defendant that it was working with State of Minnesota and a related party on settlement was not egregious misconduct sufficient to support an unclean hands defense). Accordingly, Defendants have failed to allege that the Bureau engaged in any misconduct, let alone egregious misconduct.

  B. <u>Defendants have failed to allege any prejudice, much less prejudice that rises to a constitutional level and bears a nexus to their ability to defend the suit</u>

In addition to pleading egregious misconduct, a defendant asserting an unclean hands defense against the government must plead that such misconduct prejudiced the defendant in its defense of the action, and that such prejudice rises to a constitutional level. *Cuban*, 798 F. Supp. 2d at 795. Here, Defendants have failed to plead any prejudice whatsoever, much less prejudice to their defense of this action that rises to a constitutional level. This is fatal to their affirmative defense of unclean hands, and the Court should strike it. *See SEC v. Am Growth Funding II,*

*LLC*, No. 16-cv-00828 (KMW), 2016 WL 8314623, at *6-7 (S.D.N.Y. Dec. 30, 2016) (striking unclean hands affirmative defense where defendants did "not plead[] that they suffered any prejudice at all from the alleged misconduct of the SEC staff, much less prejudice of a constitutional magnitude"); *Consumer Health Benefits Ass'n*, 2011 WL 13295634, *2-4 (striking unclean hands affirmative defense where defendant failed to plead that "any resulting prejudice [he] suffered as a result of the actions rose to [a] constitutional level"); *Cuban*, 798 F. Supp. 2d at 796 (striking unclean hands affirmative defense where defendant failed to plead that the alleged misconduct prejudiced his defense of the action); *see also SEC v. Follick*, No. 00-cv-4385 (KMW), 2002 WL 31833868, at *8 (S.D.N.Y. Dec. 18, 2002) ("Wall's claim fails because he has not demonstrated that any of the improper actions he alleges are prejudicing him in defense of this action. Nothing the SEC or any other Government actor is alleged to have done will prevent him from putting forth his defenses to the suit. Thus, Wall's 'unclean hands' defense must fail."); *Elecs. Warehouse, Inc.*, 689 F. Supp. at *73 (denying motion to supplement pleadings with unclean hands defense because "[t]here is no nexus between the alleged misconduct and the Commission's allegations against" defendant).

C. <u>The Bureau will suffer prejudice if this affirmative defense is permitted to proceed to discovery</u>

Although the Bureau does not have to show prejudice, the Bureau will suffer prejudice if this invalid defense is permitted to proceed to discovery. As the *Cuban* court explained: "Affirmative defenses that are only conceivably relevant because the agency seeks a statutory equitable remedy can easily become instruments to challenge, and thereby to effectively derail, the enforcement action." 798 F. Supp. 2d. at 794. The predictable consequence is that the parties will "become embroiled in a wide-ranging and intrusive dispute about how the [agency] has conducted the enforcement action," and the focus improperly shifts from the defendants' alleged

misconduct to whether the agency engaged in misconduct, leading to increased delay and litigation expenses, and undermining the public's interest in effective law enforcement. *Id.* at 794-95. This Court should accordingly strike this insufficient and invalid defense.

## II. THE COURT'S MOTION TO DISMISS RULING (ECF NO. 23) FORECLOSES DEFENDANTS' AMENDED AFFIRMATIVE DEFENSES REGARDING THE CONSTITUTIONALITY OF THE BUREAU

Defendants allege two amended affirmative defenses regarding the constitutionality of the Bureau. First, defendants allege that "[a]t the time this suit was filed, the structure of the Bureau violated Article II of the Constitution by limiting the President's power of removal. The remedy for this violation is to invalidate the Bureau's action during the time period in which it was unconstitutional."[6] Defendants further allege that "[t]he structure of the Bureau violates Article I, §9, cl. 7 of the Constitution on the basis that the Bureau is not accountable to Congress through Appropriations. As a result, Plaintiff lacks standing to bring this action."[7] Defendants state that they assert both affirmative defenses "[t]o preserve the record for appeal."[8]

This Court should strike Defendants' affirmative defenses regarding the constitutionality of the Bureau because the Court has already ruled against Defendants on the same issues at the motion to dismiss stage. *See, e.g.*, *CFPB v. Ocwen Fin. Corp.,* No. 17-80495 (KAM), 2020 WL 2062324, at *2-3 (S.D. Fla. Apr. 29, 2020) (striking affirmative defense regarding the Bureau's constitutionality because the court denied defendants' motion to dismiss on the same issue); *Prakash v. Pulsent Corp. Employee Long Term Disability Plan*, No. 06-7592 (SC), 2008 WL 3905445, at *2 (N.D. Cal. Aug. 20, 2008) (striking ERISA preemption affirmative defense as "legally insufficient and redundant" because court "previously rejected [that] exact argument" in

---

[6] Defendants each assert the Article II violation as their third affirmative defense. ECF Nos. 36-39, 40-2.
[7] Defendants each assert the Article I violation as their fifth affirmative defense. ECF Nos. 36-39, 40-2.
[8] ECF Nos. 36-39, 40-2.

10

ruling on motion to dismiss); *United States ex rel. Spay v. CVS Caremark Corp.*, No. 09-4672 (RLB), 2013 WL 1755214, *6-7 (E.D. Pa. Apr. 24, 2013) (striking affirmative defense regarding express false certification in False Claims Act case because court rejected the same argument at the motion to dismiss stage); *see also Luxottica Grp., S.p.A. v. Airport Mini Mall, LLC*, 186 F. Supp. 3d 1370, 1375-76 (N.D. Ga. 2016) (striking affirmative defense of failure to state a claim because the court already rejected the argument on which the defense was based); *United States ex rel. Landis v. Tailwind Sports Corp.*, 308 F.R.D. 1, 4-5 (D.D.C. 2015) (same).

Here, the Court has already rejected Defendants' constitutional arguments. Specifically, the Court held that, even though the Bureau Director was unconstitutionally insulated from removal at the time this action was filed, that did not invalidate or require a dismissal of this action because the Bureau subsequently ratified this action under the leadership of a Director indisputably removable at will. ECF No. 23 at 15. In addition, the Court held that the Bureau's funding provisions comply with the Appropriations Clause; thus, the Court declined to dismiss the action on that basis. *Id*. at 19. And the Court's ruling on these issues preserves them for appeal, rendering the affirmative defenses unnecessary for that purpose. *See Ocwen Fin. Corp.*, 2020 WL 2062324, at *2-3. Accordingly, the Court should strike Defendants' affirmative defenses regarding the constitutionality of the Bureau as legally insufficient. *See Ocwen Fin. Corp.*, 2020 WL 2062324, at *2-3; *see also United States v. DWC Tr. Holding Co.*, No. 93-cv-2859 (JRH), 1994 WL 395730, at *1 (D. Md. July 22, 1994). The Court should not allow Defendants to pursue these rejected theories because it would "unfairly prejudice the CFPB as the Bureau was meritorious on [these] issue[s], unnecessarily consume the Court's resources, and prolong the [proceedings]." *See Ocwen Fin. Corp.*, 2020 WL 2062324, *2-3 (citations omitted).

### III.   DEFENDANTS' AMENDED "*BONA FIDE* ERROR" AFFIRMATIVE DEFENSE IS INSUFFICIENTLY PLED

The FDCPA provides a limited shield of liability for a debt collector upon a showing that its violation of the FDCPA "was not intentional and was the result of a *bona fide* error notwithstanding the maintenance of procedures reasonably adapted to avoid such error." 15 U.S.C. § 1692k(c). The Supreme Court has held that the bona fide error defense "does not apply to a violation of the FDCPA resulting from a debt collector's incorrect interpretation of the legal requirements of that statute." *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 559 U.S. 573, 604-5 (2010). Accordingly, the *bona fide* error defense "may only be used in circumstances where a violation results from other causes, such as a clerical or factual mistake." *Bradshaw*, 725 F. Supp. 2d at 537 (citing *Jerman*, 559 U.S. at 577).

In their amended "*bona fide* error" defense, Defendants allege that:

> Any act or omission by Defendant, if determined to be in violation of the Fair Debt Collection Practices Act ("FDCPA"), was not intentional and was the result of a *bona fide* error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error. Accordingly, Defendant would have no liability pursuant to 15 U.S.C. § 1692k(c). Defendant maintains detail [sic] policies and procedures for furnishing accurate information to the consumer reporting agencies, including policies and procedures focused on obtaining data from creditors, confirming the accuracy and integrity of that data, receiving, reviewing, investigating, and responding to consumer disputes (direct and indirect), auditing, and training employees. These policies and procedures are reasonably adapted to avoid errors in the collection process, including credit reporting. Defendant followed these policies and procedures throughout the relevant time period. To the extent and [sic] error occurred in the collection process, including credit reporting, those errors were not intentional.[9]

Here, Defendants have not provided notice of any specific error upon which they rely to assert this defense. Such pleading would be insufficient under even a Rule 8 standard, but Defendants are required to plead any alleged error with particularity pursuant to Rule 9(b). *See*

---

[9] Defendants each assert "*bona fide* error" as their second amended affirmative defense. ECF Nos. 36-39, 40-2.

12

Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."). To satisfy Rule 9(b), a *bona fide* error defense must therefore allege "the who, what, when, where, and how" of the alleged error. *See Balon v. Enhanced Recovery Co., Inc.*, 316 F.R.D. 96, 103 (M.D. Pa. 2016); *see also U.S. ex rel. Ahumada v. NISH*, 756 F.3d 268, 280-81 (4th Cir. 2014) (holding that a party must plead the "who, what, when, where, and how" of alleged fraud to meet Rule 9(b) standard). Accordingly, the Court should strike this defense because it is insufficiently pled. *See Bradshaw*, 725 F. Supp. 2d at 537 (striking *bona fide* error defense because plaintiff's failure to identify a specific mistake of fact did not meet Rule 9(b) pleading standard); *see also Racick v. Dominion Law Assocs.*, 270 F.R.D. 228, 235 (E.D.N.C. 2010) (striking *bona fide* error defense because it did not identify the specific error upon which the defense was based).

In addition to failing to identify any error with particularity, Defendants have also failed to identify any policies and procedures that were maintained and "reasonably adapted to avoid" the error. Courts require a close nexus between an actual error and the policies identified by a collector as having been reasonably adapted and maintained to avoid such error. *See McCullough v. Johnson, Rodenburg, & Lauinger, LLC*, 637 F.3d 939, 948 (9th Cir. 2011) (affirming ruling that *bona fide* error defense failed as a matter of law where policy regarding identifying time-barred debt was not tied to specific error collector made of overlooking contrary information in its electronic files, and therefore was not reasonably adapted to avoid such error); *Ansari v. Elec. Document Processing, Inc.*, No. 12-cv-01245 (LHK), 2013 WL 4647621, at *6 (N.D. Cal. Aug. 29, 2013) (holding that leave to amend to add *bona fide* error defense would be futile because alleged policies related to general training of process servers were not reasonably adapted to avoid specific error of the intentional falsification of proof of service). Here, Defendants list

13

generic policies that any debt collector might have but Defendants have not tied them to any particular error at issue in this case. This falls far short of what courts require to sustain a *bona fide* error defense, and the defense should be stricken.

Inclusion of this vague defense would unnecessarily expand the scope of discovery and prejudice the Bureau as it's not even clear what "mistake" Defendants claim excuses their illegal conduct. Accordingly, Defendants' *bona fide* error defense should be stricken.

## IV. THE AMENDED AFFIRMATIVE DEFENSES SHOULD BE STRICKEN WITH PREJUDICE

As discussed above, the Bureau previously moved to strike Defendants' affirmative defenses. ECF No. 35. In response to the arguments the Bureau raised in its initial motion, Defendants deleted some affirmative defenses and revised others. ECF Nos. 36-39, 40-2. However, the remaining affirmative defenses challenged in this motion remain insufficient for substantially the same reasons the Bureau raised in its initial motion. Having already had two chances to properly plead affirmative defenses, Defendants should not be given another opportunity to do so. *See Advantage Futures LLC v. Herm LLC*, No. 18-cv-2005, 2019 WL 3766102, at *6 (N.D. Ill. Aug. 8, 2019) ("Given the substantial overlap between Defendants' original and amended affirmative defenses, as well as the similarity of Advantage's arguments in its serial motions to strike the original and amended defenses . . . Defendants undoubtedly put forward their best effort in the amended affirmative defenses. The amended defenses accordingly are stricken with prejudice[.]"); *Ansari*, 2013 WL 4647621, at *5 ("Defendants have already had two bites at the apple to plead affirmative defenses. Defendants have failed to do so and now seek a third bite. The Court declines to give Defendants yet another opportunity to amend."). Accordingly, the Court should strike the challenged defenses with prejudice.

14

**CONCLUSION**

For all these reasons, the Court should grant the Bureau's Motion to Strike Defendants' Amended Affirmative Defenses.

Dated:  February 9, 2021                             Respectfully submitted,

THOMAS G. WARD
*Enforcement Director*

DAVID M. RUBENSTEIN
*Deputy Enforcement Director*

THOMAS KIM
*Assistant Deputy Enforcement Director*

/s/   Jessica Rank Divine
Jessica Rank Divine (District of Maryland Bar No.
   810852; New York Bar No. 4544573)
Carl L. Moore (District of Maryland Bar
   No. 811325; Maryland Attorney No. 0912160268)
Kevin E. Friedl (District of Maryland Bar
   No. 811730; New York Bar No. 5240080)
Consumer Financial Protection Bureau
1700 G Street NW
Washington, DC 20552
Telephone (Divine): 202-435-7863
Telephone (Moore): 202-435-9107
Telephone (Friedl): 202-435-9268
Fax: 202-435-7722
jessica.divine@cfpb.gov
carl.moore@cfpb.gov
kevin.friedl@cfpb.gov

*Attorneys for the Consumer Financial Protection Bureau*