UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

| | |
|---|---|
| Bureau of Consumer Financial Protection, | Case No. 8:19-cv-02817-GJH |
| Plaintiff, | **[PROPOSED] STIPULATED FINAL JUDGMENT AND ORDER** |
| v. | |
| Fair Collections & Outsourcing, Inc., et al., | |
| Defendants. | |

The Bureau of Consumer Financial Protection ("Bureau") commenced this civil action on September 25, 2019, to obtain injunctive relief and civil penalties from Fair Collections & Outsourcing, Inc., Fair Collections & Outsourcing of New England, Inc., FCO Worldwide, Inc., FCO Holding, Inc., and Michael E. Sobota ("Sobota"). The Complaint alleges violations of Section 1036 of the Consumer Financial Protection Act of 2010 (CFPA), 12 U.S.C. § 5536(a), Section 623 of the Fair Credit Reporting Act (FCRA), 15 U.S.C. § 1681s-2, Section 1022.42 of Regulation V, 12 C.F.R. § 1022.42, and Section 807 of the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692e, in connection with the Defendants' collection of debt and furnishing of consumer information.

The Bureau and Defendants agree to entry of this Stipulated Final Judgment and Order ("Order"), without adjudication of any issue of fact or law, to settle and resolve all matters in dispute arising from the conduct alleged in the Complaint.

THEREFORE, it is ORDERED:

## FINDINGS

1.      This Court has jurisdiction over the parties and the subject matter of this action.

2.      Defendants neither admit nor deny any allegations in the Complaint, except as specified in this Order. For purposes of this Order, Defendants admit the facts necessary to establish the Court's jurisdiction over them and the subject matter of this action.

3.      Defendants waive all rights to seek judicial review or otherwise challenge or contest the validity of this Order and any claim they may have under the Equal Access to Justice Act, 28 U.S.C. § 2412, concerning the prosecution of this action to the date of this Order. Each Party agrees to bear its own costs and expenses, including, without limitation, attorneys' fees.

4.      Entry of this Order is in the public interest.

## DEFINITIONS

5.   The following definitions apply to this Order:

a.   **"Accuracy"** is synonymous in meaning and equal in scope
to the definition of the term, as of the Effective Date, in
Subpart E of the Furnisher Rule, 12 C.F.R. 1022.41(a),
including "that information a furnisher provides to a
consumer reporting agency about an account or other
relationship with the consumer correctly (1) [r]eflects the
terms of and liability for the account or other relationship;
(2) [r]eflects the consumer's performance and other conduct
with respect to the account or other relationship; and (3)
[i]dentifies the appropriate consumer."

b.   **"Consumer Reporting Agency"** or **"CRA"** is
synonymous in meaning and equal in scope to the definition
of the term, as of the Effective Date, in Section 603 of the
FCRA, 15 U.S.C. § 1681a(f) and includes "any person which,
for monetary fees, dues, or on a cooperative nonprofit basis,
regularly engages in whole or in part in the practice of
assembling or evaluating consumer credit information or
other information on consumers for the purpose of

furnishing consumer reports to third parties, and which uses any means or facility of interstate commerce for the purpose of preparing or furnishing consumer reports."

c. **"Corporate Defendants"** means Fair Collections & Outsourcing, Inc., Fair Collections and Outsourcing of New England, Inc., FCO Holding, Inc., FCO Worldwide, Inc. (collectively d/b/a "FCO"), and their successors and assigns.

d. **"Defendants"** means Individual Defendant and the Corporate Defendants, individually, collectively, or in any combination.

e. **"Direct Dispute"** is synonymous in meaning and equal in scope to the definition of the term, as of the Effective Date, in Subpart E of Regulation V, 12 C.F.R. pt. 1022.41(b), and includes "a dispute submitted directly to a furnisher (including a furnisher that is a debt collector) by a consumer concerning the accuracy of any information contained in a consumer report and pertaining to an account or other relationship that the furnisher has or had with the consumer."

f.  "**Effective Date**" means the date on which the Order is entered by the Court.

g.  "**Enforcement Director**" means the Assistant Director of the Office of Enforcement for the Consumer Financial Protection Bureau, or his or her delegate.

h.  **"Identity Theft Report"** is synonymous in meaning and equal in scope to the definition of the term, as of the Effective Date, in Section 603(q)(4) of the FCRA, 15 U.S.C. § 1681a(q)(4) and 12 C.F.R. § 1022.3(i), as set forth in Appendix A of this Order.

i.  **"Indirect Dispute"** means a notice to a person of a dispute made by a consumer, directly or indirectly through a reseller, to a Consumer Reporting Agency regarding the completeness or accuracy of any item of information provided by the person to a Consumer Reporting Agency.

j.  **"Individual Defendant"** means Michael E. Sobota and any other names by which he may be known.

k.  **"Integrity"** is synonymous in meaning and equal in scope to the definition of the term, as of the Effective Date, in Subpart E of the Furnisher Rule, 12 C.F.R. 1022.41(d) and

Section I(b)(2) of Appendix E to Subpart E of the Furnisher Rule, including "that information that a furnisher provides to a consumer reporting agency about an account or other relationship with the consumer (1) [i]s substantiated by the furnisher's records at the time it is furnished; (2) [i]s furnished in a form and manner that is designed to minimize the likelihood that the information may be incorrectly reflected in a consumer report; thus, the furnished information should: (A) [i]nclude appropriate identifying information about the consumer to whom it pertains; and (B) [b]e furnished in a standardized and clearly understandable form and manner and with a date specifying the time period to which the information pertains; and (3) [i]ncludes the credit limit, if applicable and in the furnisher's possession."

l.   "**Related Consumer Action**" means a private action by or on behalf of one or more consumers or an enforcement action by another governmental agency brought against any Defendant based on substantially the same facts as described in the Complaint.

# ORDER

## CONDUCT RELIEF

### I

**IT IS ORDERED that:**

6.     The Corporate Defendants and their officers, agents, servants, employees, and attorneys, and all other persons in active concert or participation with them who have actual notice of this Order, whether acting directly or indirectly, may not violate Sections 623(a)(6) or 623(b)(1) of the FCRA, 15 U.S.C. §§ 1681s-2(a)(6), (b)(1), or Section 1022.42 of Regulation V, 12 C.F.R. pt. 1022.42.

7.     The Corporate Defendants must take the following affirmative actions:

> a.  <u>Policies and Procedures</u>: within 75 days of the Enforcement Director's determination of non-objection to the selection of an independent consultant, as set forth in paragraph 10, in consultation with the independent consultant, the Corporate Defendants shall modify or update existing written policies and procedures regarding the Accuracy and Integrity of the information that they furnish to Consumer Reporting Agencies, or shall establish new written policies and

procedures, as necessary to ensure that they have reasonable written policies and procedures regarding the Accuracy and Integrity of information furnished. In so doing, the Corporate Defendants must consider the guidelines in Appendix E of Regulation V and incorporate them where appropriate. Without limiting the foregoing, the Corporate Defendants' written policies and procedures related to the handling of consumer disputes must, at a minimum, (1) set forth detailed instructions for conducting investigations of all consumer disputes, including Direct and Indirect Disputes, and disputes that include Identity Theft Reports; (2) require a documented description of the steps taken to investigate each dispute; and (3) require retention of supporting documentation that accompanies disputes.

b. Within 30 days after receiving the Enforcement Director's non-objection to the Compliance Plan, as set forth in paragraphs 13 and 14, the Corporate Defendants shall implement the written policies and procedures required by paragraph 7.a.

c. <u>Internal Controls</u>: within 75 days of the Enforcement Director's determination of non-objection to the selection of an independent consultant, in consultation with the independent consultant, the Corporate Defendants shall modify or update existing written policies and procedures, or shall establish new written policies and procedures, as necessary to ensure that they have written policies and procedures setting forth a system of internal controls regarding the Accuracy and Integrity of the information about consumers that the Corporate Defendants furnish to CRAs (Internal Controls). The purpose of the Internal Controls will be to identify practices or activities of the Corporate Defendants that could compromise the Accuracy or Integrity of information furnished to CRAs and to evaluate the effectiveness of the Corporate Defendants' policies, procedures, and methods used to furnish consumer information. Without limiting the foregoing, the Internal Controls must, at a minimum, require that the Corporate Defendants regularly (1) assess the Accuracy and Integrity of the information they have provided to CRAs; (2) assess

whether the Corporate Defendants' responses to disputes have complied with the FCRA and the Furnisher Rule; (3) assess whether the Corporate Defendants' furnishing of information, including the investigation of and responses to consumer disputes, otherwise complies with the FCRA, the Furnisher Rule, and the Corporate Defendants' written policies and procedures; (4) take prompt corrective action to address any failures to comply with the FCRA, the Furnisher Rule, or the Corporate Defendants' written policies and procedures; and (5) update the Corporate Defendants' policies and procedures, or the implementation of those policies and procedures, as necessary to address any compliance failures identified through the Internal Controls.

d. Within 15 days after receiving the Enforcement Director's non-objection to the Compliance Plan, the Corporate Defendants shall implement the Internal Controls.

e. Identity Theft Report Review Program: within 75 days of the Enforcement Director's determination of non-objection to the selection of an independent consultant, in consultation with the independent consultant, the Corporate Defendants

will establish an identity theft report review program to identify instances in which the Corporate Defendants received Identity Theft Reports directly from consumers prior to the Effective Date and take steps to ensure that their handling of those Identity Theft Reports complies with Section 623(a)(6) of the FCRA, 15 U.S.C. § 1681s-2(a)(6) (Identity Theft Report Review Program).

    i.  The Identity Theft Report Review Program shall require the Corporate Defendants, in consultation with the independent consultant, to develop and implement a process to identify Identity Theft Reports that the Corporate Defendants received directly from a consumer by mail, email, or facsimile prior to the Effective Date and that are associated with accounts with respect to which the Corporate Defendants (1) have furnished information to a CRA within the 7-year period immediately preceding the Effective Date and have not otherwise instructed the CRA to delete such information, or (2) may furnish information to a CRA on or after the Effective Date.

ii. At a minimum, for each Identity Theft Report identified in the Identity Theft Report Review Program, the Corporate Defendants shall (1) determine whether the Corporate Defendants previously conducted an investigation into the consumer's claim of identity theft; and (2) if the Corporate Defendants did not conduct an investigation that determined the disputed information was correct, cease furnishing information about the consumer, and resume furnishing information about the consumer only after such an investigation has been conducted and the disputed information has been determined to be correct.

f. Within 30 days after receiving the Enforcement Director's non-objection to the Compliance Plan, the Corporate Defendants shall implement the Identity Theft Report Review Program and, within 90 days of receiving non-objection, shall complete the review.

**IT IS FURTHER ORDERED that:**

8.      Defendants and their officers, agents, servants, employees, and attorneys, and all other persons in active concert or participation with them who have actual notice of this Order, whether acting directly or indirectly, may not violate Sections 807 and 807(10) of the FDCPA, 15 U.S.C. § 1692e, e(10), including by representing, expressly or by implication, that Defendants have a reasonable basis to assert that consumers owe debts when, in fact, Defendants do not have a reasonable basis to make those assertions.

9.      Defendants must take the following affirmative actions:

    a. Within 75 days of the Enforcement Director's determination of non-objection to the selection of an independent consultant, in consultation with the independent consultant, the Defendants shall modify or update existing written policies and procedures regarding the intake of new collection accounts, or shall establish new written policies and procedures, as necessary to ensure that they have written intake policies and procedures designed to evaluate the quality, completeness, Accuracy, and Integrity of

account information provided by a client before commencing collections on an account; and

b.  Within 75 days of the Enforcement Director's determination of non-objection to the selection of an independent consultant, in consultation with the independent consultant, Defendants shall modify or update existing written policies and procedures, or establish new policies and procedures, as necessary to ensure that they have policies and procedures to monitor, evaluate, and address trends in disputes and other indicia of unreliability, including but not limited to relatively high dispute rates without explanation or the inability to obtain information from creditors upon request, regarding portfolios that contain accounts that any Corporate Defendant commences collecting or furnishing after the Effective Date; and

c.  Within 75 days of the Enforcement Director's determination of non-objection to the selection of an independent consultant, in consultation with the independent consultant, Defendants shall develop a program to review portfolios that contained accounts that Defendants furnished to a CRA

within the 7-year period immediately preceding the Effective Date or that were in an unpaid status as of the Effective Date (the Portfolio Review Program); and evaluate whether the portfolios may reflect indicia of unreliability, including but not limited to, relatively high dispute rates without explanation or the inability to obtain information from creditors upon request, and shall address, as appropriate, any issues identified;

d. Within 15 days after receiving the Enforcement Director's non-objection to the Compliance Plan, as set forth in paragraphs 13 and 14, the Defendants shall implement the written policies and procedures required by paragraphs 9(a)-(b);

e. Within 30 days of receiving the Enforcement Director's non-objection to the Compliance Plan, the Corporate Defendants shall implement the Portfolio Review Program set forth in paragraph 9(c), and, within 90 days of receiving non-objection, shall complete the review.

## II

## Independent Consultant's Report and Compliance Plan

**IT IS FURTHER ORDERED** that:

10.    Within 15 days of the Effective Date, Defendants shall submit the names and curriculum vitae of one or more independent consultants, with specialized experience in consumer-information furnishing and debt collection, to the Enforcement Director, who shall have the discretion to make a determination of non-objection. The Enforcement Director shall make such determination within 10 days, or direct the Defendants to select one or more different independent consultants. If the Enforcement Director directs the Defendants to select one or more different independent consultants, the Defendants shall do so within 20 days, and submit the names and curriculum vitae of the newly-identified independent consultant(s) to the Enforcement Director, who may then make a determination of non-objection within 5 days.

11.    Within 20 days of the Enforcement Director's determination of non-objection, the Defendants shall engage the independent consultant to conduct an independent review of Defendants' furnishing of consumer information and collection of debt. The purposes of the review must be to:

a.  Make recommendations to develop, implement, and maintain policies and procedures to ensure management-level oversight of and commitment to compliance with the FCRA and FDCPA;

b.  Make recommendations to develop, implement, and maintain policies and procedures, and other applicable employee guidance to address the acts and practices that are the subject of this Order;

c.  Make recommendations to develop, implement, and maintain employee training to address the acts and practices that are the subject of this Order;

d.  Make recommendations to develop, implement, and maintain monitoring, testing, and other compliance oversight and internal controls to address the acts and practices that are the subject of this Order; and

e.  Make recommendations regarding implementation of the requirements of Section I of this Order, consistent with the deadlines set forth in this Order;

12.  Within 90 days of the Enforcement Director's determination of non-objection to the selection of the independent consultant, the

independent consultant(s) must prepare a written report detailing the findings of the review (the "Independent Consultant Report"), and provide the Independent Consultant Report to the Defendants.

13.    Within 30 days of receiving the Independent Consultant Report, the Defendants must:

    a.  Develop a plan (the "Compliance Plan") to:

        i.  correct any deficiencies identified in the Independent Consultant Report;

        ii.  implement any recommendations or explain in writing why a particular recommendation is not being implemented;

        iii.  address each action required by Section I this Order;

        iv.  set forth specific timeframes and deadlines for implementation of the steps described above; and

    b.  Submit the Independent Consultant Report and the Compliance Plan to the Enforcement Director.

14.    The Enforcement Director will have the discretion to make a determination of non-objection to the Compliance Plan or to direct the Defendants to revise it. If the Enforcement Director directs the Defendants to revise the Compliance Plan, the Defendants must make the requested

revisions and resubmit the Compliance Plan to the Enforcement Director within 20 days.

15.     After receiving notification that the Enforcement Director has made a determination of non-objection to the Compliance Plan, the Defendants must implement and adhere to the steps, recommendations, deadlines, and timeframes outlined in the Compliance Plan.

## MONETARY PROVISIONS

## III

## Order to Pay Civil Money Penalty

**IT IS FURTHER ORDERED** that:

16.     Under Section 1055(c) of the CFPA, 12 U.S.C. § 5565(c), by reason of the violations of law alleged in the Complaint and continuing until the Effective Date, and taking into account the factors in 12 U.S.C. § 5565(c)(3), Defendants must pay a civil money penalty of $850,000 to the Bureau.

17.     Within 10 days of the Effective Date, Defendants must pay the civil money penalty by wire transfer to the Bureau or to the Bureau's agent in compliance with the Bureau's wiring instructions.

18.     The civil money penalty paid under this Order will be deposited in the Civil Penalty Fund of the Bureau as required by Section 1017(d) of the CFPA, 12 U.S.C. § 5497(d).

19.     Defendants must treat the civil money penalty paid under this Order as a penalty paid to the government for all purposes. Regardless of how the Bureau ultimately uses those funds, Defendants may not:

> a.  Claim, assert, or apply for a tax deduction, tax credit, or any other tax benefit for any civil money penalty paid under this Order; or
>
> b.  Seek or accept, directly or indirectly, reimbursement or indemnification from any source, including but not limited to payment made under any insurance policy, with regard to any civil money penalty paid under this Order.

20.     Individual Defendant agrees that the civil penalty imposed by the Order represents a civil penalty owed to the United States Government, is not compensation for actual pecuniary loss, and, thus, as to Individual Defendant, it is not subject to discharge under the Bankruptcy Code under 11 U.S.C. § 523(a)(7).

21.     In the event of any default on Defendants' obligations to make payment under this Order, interest, computed under 28 U.S.C. § 1961, as

amended, will accrue on any outstanding amounts not paid from the date of default to the date of payment, and will immediately become due and payable.

22.    Defendants relinquish all dominion, control, and title to the funds paid under this Order to the fullest extent permitted by law and no part of the funds may be returned to Defendants.

23.    The facts alleged in the Complaint will be taken as true and be given collateral estoppel effect, without further proof, in any proceeding based on the entry of the Order, or in any subsequent civil litigation by or on behalf of the Bureau, including in a proceeding to enforce its rights to any payment or monetary judgment under this Order.

24.    Under 31 U.S.C. § 7701, Defendants, unless they already have done so, must furnish to the Bureau their taxpayer-identification numbers, which may be used for purposes of collecting and reporting on any delinquent amount arising out of this Order.

25.    For 10 years after the Effective Date, within 30 days of the entry of a final judgment, order, or settlement in a Related Consumer Action, Defendants must notify the Enforcement Director of the final judgment, order, or settlement in writing. That notification must indicate the amount of redress, if any, that Defendants paid or is required to pay to consumers

and describe the consumers or classes of consumers to whom that redress has been or will be paid. To preserve the deterrent effect of the civil money penalty in any Related Consumer Action, Defendants may not argue that Defendants are entitled to, nor may Defendants benefit by, any offset or reduction of any monetary remedies imposed in the Related Consumer Action because of the civil money penalty paid in this action or because of any payment that the Bureau makes from the Civil Penalty Fund. If the court in any Related Consumer Action offsets or otherwise reduces the amount of compensatory monetary remedies imposed against Defendants based on the civil money penalty paid in this action or based on any payment that the Bureau makes from the Civil Penalty Fund, Defendants must, within 30 days after entry of a final order granting such offset or reduction, notify the Bureau and pay the amount of the offset or reduction to the U.S. Treasury. Such a payment will not be considered an additional civil money penalty and will not change the amount of the civil money penalty imposed in this action.

26.    Under Section 604(a)(1) of the Fair Credit Reporting Act, 15 U.S.C. § 1681 b(a)(1), any Consumer Reporting Agency may furnish a consumer report concerning any Defendant to the Bureau, which may be

used for purposes of collecting and reporting on any delinquent amount arising out of this Order.

## COMPLIANCE PROVISIONS

## IV

## Reporting Requirements

**IT IS FURTHER ORDERED** that:

27.     Defendants must notify the Bureau of any development that may affect compliance obligations arising under this Order, including but not limited to, a dissolution, assignment, sale, merger, or other action that would result in the emergence of a successor company; the creation or dissolution of a subsidiary, parent, or affiliate that engages in any acts or practices subject to this Order; the filing of any bankruptcy or insolvency proceeding by or against Defendants; or a change in any Defendant's name or address. Defendants must provide this notice at least 30 days before the development or as soon as practicable after learning about the development, whichever is sooner.

28.     Within 7 days of the Effective Date, each Defendant must:

   a.   Designate at least one telephone number and email, physical, and postal address as points of contact, which the Bureau may use to communicate with Defendant;

b.  Identify all businesses for which Defendant is the majority owner, or that Defendant directly or indirectly controls, by all of their names, telephone numbers, and physical, postal, email, and Internet addresses;

c.  Describe the activities of each such business, including the products and services offered, and the means of advertising, marketing, and sales;

d.  Identify Individual Defendant's telephone numbers and all email, Internet, physical, and postal addresses, including all residences; and

e.  Describe in detail Individual Defendant's involvement in any business for which he performs services in any capacity or which he wholly or partially owns, including Defendant's title, role, responsibilities, participation, authority, control, and ownership.

29.   Corporate Defendants must report any change in the information required to be submitted under paragraph 28 at least 30 days before the change or as soon as practicable after the learning about the change, whichever is sooner. For 20 years after the Effective Date, Individual Defendant must report any change in the information required

to be submitted under paragraph 28 at least 30 days before the change or as soon as practicable after the learning about the change, whichever is sooner.

30.    Within 90 days of receiving notice of non-objection to the Compliance Plan, and again one year after receiving notice of non-objection to the Compliance Plan, each Defendant must submit to the Enforcement Director an accurate written compliance progress report sworn to under penalty of perjury (Compliance Report), which, at a minimum:

    a.  Lists each applicable paragraph and subparagraph of the Order and describes in detail the manner and form in which each Defendant has complied with each such paragraph and subparagraph this Order;

    b.  Describes in detail the manner and form in which each Defendant has complied with the Compliance Plan; and

    c.  Attaches a copy of each Order Acknowledgment obtained under Section V, unless previously submitted to the Bureau.

# V

## Order Distribution and Acknowledgment

**IT IS FURTHER ORDERED** that,

31.     Within 7 days of the Effective Date, each Defendant must submit to the Enforcement Director an acknowledgment of receipt of this Order, sworn under penalty of perjury.

32.     Within 30 days of the Effective Date, Corporate Defendants and Individual Defendant, for any business for which he is the majority owner or which he directly or indirectly controls must deliver a copy of this Order to each of its board members and executive officers, as well as to any managers, employees, service providers, or other agents and representatives who have responsibilities related to the subject matter of the Order.

33.     For 5 years from the Effective Date, Corporate Defendants and Individual Defendant, for any business that offers or provides a product or service related to the subject matter of this Order for which he is the majority owner or which he directly or indirectly controls, must deliver a copy of this Order to any business entity resulting from any change in structure referred to in Section IV, any future board members and executive officers, as well as to any managers, employees, service providers, or other

agents and representatives who will have responsibilities related to the subject matter of the Order before they assume their responsibilities.

34.   Defendants must secure a signed and dated statement acknowledging receipt of a copy of this Order, ensuring that any electronic signatures comply with the requirements of the E-Sign Act, 15 U.S.C. § 7001 *et seq.*, within 30 days of delivery, from all persons receiving a copy of this Order under this Section.

35.   Within 90 days of the Effective Date, Defendants must provide the Bureau with a list of all persons and their titles to whom this Order was delivered through that date under paragraphs 32 and 33 and a copy of all signed and dated statements acknowledging of receipt of this Order under paragraph 34.

# VI

# Recordkeeping

**IT IS FURTHER ORDERED** that

36.   Defendants must create, for at least 5 years from the Effective Date, including for any business for which Individual Defendant, individually or collectively with any other Defendant, is a majority owner or which he directly or indirectly controls, the following business records:

a.   All documents and records necessary to demonstrate full

compliance with each provision of this Order, including all

submissions to the Bureau.

Defendants must retain these documents for at least 5 years after creation

and make them available to the Bureau upon the Bureau's request.

37.     Defendants must retain, for at least 5 years from the Effective

Date or 5 years after creation, whichever is longer, including for any

business for which Individual Defendant, individually or collectively with

any other Defendant, is a majority owner or which he directly or indirectly

controls, the following business records:

a.  All consumer complaints regarding the collection of debt or

furnishing of consumer information (whether received

directly or indirectly, such as through a third party), and any

responses to those complaints.

b.  Records showing, for each employee providing services

related to debt collection or the furnishing of consumer

information, if available, that person's: name; telephone

number; email, physical, and postal address; job title or

position; dates of service; and, if applicable, the reason for

termination.

c.  Records showing, for each service provider providing

services related to debt collection or the furnishing of

consumer information, if available, the name of a point of

contact, and that person's telephone number; email,

physical, and postal address; job title or position; dates of

service; and, if applicable, the reason for termination.

d.  Copies of all training materials and written policies and

procedures related to the subject matter of this Order,

including any such materials used by a third party on behalf

of Defendants.

38.    Defendant must make the documents identified in paragraphs

36 and 37 available to the Bureau upon the Bureau's request.

## VII

## Notices

**IT IS FURTHER ORDERED** that:

39.    Unless otherwise directed in writing by the Bureau, Defendants

must provide all submissions, requests, communications, or other

documents relating to this Order in writing, with the subject line, "CFPB *v.*

*Fair Collections & Outsourcing, Inc.*, Case No. 8:19-cv-02817-GJH (D.

Md.)," and send them by overnight courier or first-class mail to the below

address and contemporaneously by email to

Enforcement_Compliance@cfpb.gov:

Assistant Director for Enforcement

Consumer Financial Protection Bureau

ATTENTION: Office of Enforcement

1700 G Street, N.W.

Washington D.C. 20552

# VIII

## Cooperation with the Bureau

**IT IS FURTHER ORDERED** that:

40.    Defendants must cooperate fully with the Bureau in this matter and in any investigation related to or associated with the conduct described in the Complaint. Defendant must provide truthful and complete information, evidence, and testimony. Individual Defendant must appear and Corporate Defendants must cause each Corporate Defendant's officers, employees, representatives, or agents to appear for interviews, discovery, hearings, trials, and any other proceedings that the Bureau may reasonably request upon 10 days written notice, or other reasonable notice, at such

places and times as the Bureau may designate, without the service of compulsory process.

## IX

## Compliance Monitoring

**IT IS FURTHER ORDERED** that, to monitor Defendants' compliance with this Order:

41.     Within 14 days of receipt of a written request from the Bureau, Defendants must submit additional compliance reports or other requested information, which must be sworn under penalty of perjury; provide sworn testimony; or produce documents.

42.     For purposes of this Section, the Bureau may communicate directly with each Defendant, unless Defendant retains counsel related to these communications.

43.     Defendants must permit Bureau representatives to interview any employee or other person affiliated with Defendant who has agreed to such an interview regarding: (a) this matter; (b) anything related to or associated with the conduct described the Complaint; or (c) compliance with this Order. The person interviewed may have counsel present.

44.     Nothing in this Order will limit the Bureau's lawful use of compulsory process, under 12 C.F.R. § 1080.6.

## X

45.     Should Defendants seek to transfer or assign all or part of their operations that are subject to this Order, Defendants must, as a condition of sale, obtain the written agreement of the transferee or assignee to comply with all applicable provisions of this Order.

## XI

## Retention of Jurisdiction

**IT IS FURTHER ORDERED** that:

46.     The Court will retain jurisdiction of this matter for the purpose of enforcing this Order.

## XII

## Outstanding Motions

47.     All outstanding motions are denied as moot.

## XIII

## Service

**IT IS FURTHER ORDERED that:**

48.     This Order may be served upon Defendants by electronic mail, certified mail, or United Parcel Service, either by the United States Marshal, the Clerk of the Court, or any representative or agent of the Bureau.

**IT IS SO ORDERED**.

DATED this _____ day of _____, 20___.


_____

United States District Court Judge

# APPENDIX A

12 C.F.R. 1022.3(i) "Identity Theft Report":

(1) Identity theft report means a report:

(i) That alleges identity theft with as much specificity as the consumer can provide;

(ii) That is a copy of an official, valid report filed by the consumer with a Federal, state, or local law enforcement agency, including the United States Postal Inspection Service, the filing of which subjects the person filing the report to criminal penalties relating to the filing of false information, if, in fact, the information in the report is false; and

(iii) That may include additional information or documentation that an information furnisher or consumer reporting agency reasonably requests for the purpose of determining the validity of the alleged identity theft, provided that the information furnisher or consumer reporting agency:

(A) Makes such request not later than fifteen days after the date of receipt of the copy of the report form identified in Paragraph (i)(1)(ii) of this section or the request by the consumer for the particular service, whichever shall be the later;

(B) Makes any supplemental requests for information or documentation and final determination on the acceptance of the identity theft report within another fifteen days after its initial request for information or documentation; and

(C) Shall have five days to make a final determination on the acceptance of the identity theft report, in the event that the consumer reporting agency or information furnisher receives any such additional information or documentation on the eleventh day or later within the fifteen day period set forth in Paragraph (i)(1)(iii)(B) of this section.

(2) Examples of the specificity referenced in Paragraph (i)(1)(i) of this section are provided for illustrative purposes only, as follows:

(i) Specific dates relating to the identity theft such as when the loss or theft of personal information occurred or when the fraud(s) using the personal information occurred, and how the consumer discovered or otherwise learned of the theft.

(ii) Identification information or any other information about the perpetrator, if known.

(iii) Name(s) of information furnisher(s), account numbers, or other relevant account information related to the identity theft.

(iv) Any other information known to the consumer about the identity theft.

(3) Examples of when it would or would not be reasonable to request additional information or documentation referenced in Paragraph (i)(1)(iii) of this section are provided for illustrative purposes only, as follows:

(i) A law enforcement report containing detailed information about the identity theft and the signature, badge number or other identification information of the individual law enforcement official taking the report should be sufficient on its face to support a victim's request. In this case, without an identifiable concern, such as an indication that the report was fraudulent, it would not be reasonable for an information furnisher or consumer reporting agency to request additional information or documentation.

(ii) A consumer might provide a law enforcement report similar to the report in Paragraph (i)(1) of this section but certain important information such as the consumer's date of birth or Social Security number may be missing because the consumer chose not to provide it. The information furnisher or consumer reporting agency could accept this report, but it would be reasonable to require that the consumer provide the missing information. The Bureau's Identity Theft Affidavit is available on the Bureau's Web site (consumerfinance.gov/learnmore). The version of this form developed by the Federal Trade Commission, available on the FTC's Web site (ftc.gov/idtheft), remains valid and sufficient for this purpose.

(iii) A consumer might provide a law enforcement report generated by an automated system with a simple allegation that an identity theft occurred to support a request for a tradeline block or cessation of information furnishing. In such a case, it would be reasonable for an information furnisher or consumer reporting agency to ask that the consumer fill out and have notarized the Bureau's Identity Theft Affidavit or a similar form and provide some form of identification documentation.

(iv) A consumer might provide a law enforcement report generated by an automated system with a simple allegation that an identity theft occurred to support a request for an extended fraud alert. In this case, it

would not be reasonable for a consumer reporting agency to require additional documentation or information, such as a notarized affidavit.